1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

8   JULIO CESAR NAVAS,

9        *Petitioner*,                                    3:10-cv-00647-RCJ-WGC

10  vs.                                                   ORDER

11

12  JAMES BACA, *et al.*,

13        *Respondents*.

14

15      This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on

16  respondents' motion (#29) to dismiss for lack of complete exhaustion and petitioner's motion

17  (#32) for a stay.  The scheduling order restricted the initial motion to dismiss to exhaustion

18  issues only.  The order further provided that any request for a stay must be brought by a

19  separate motion filed by the due date for the opposition to the motion to dismiss.  On the

20  exhaustion issue, there is no dispute that the petition is a mixed petition to one extent or

21  another.  On the stay motion, petitioner seeks a stay only under *Rhines v. Weber*, 544 U.S.

22  269 (2005), with no request for other stay relief in the alternative should a *Rhines* stay be

23  denied.

24                                    ***Background***

25      Petitioner Julio Cesar Navas challenges two 2006 Nevada state judgments of

26  conviction, each pursuant to a jury verdict, of, collectively, one count of sexual assault of a

27  child, one count of lewdness with a child under 14, two counts of open and gross lewdness,

28  and one count of intimidating or bribing a witness.

1   Navas challenged the judgments of conviction on direct appeal.  The Supreme Court

2   of Nevada affirmed in a December 12, 2008, order, and the remittitur issued on January 6,

3   2009.  The time for filing a petition for a writ of *certiorari* expired on March 12, 2009.[1]

4   Nearly nine months, or 263 days, later, and within one year of the remittitur, Navas filed

5   a proper person state post-conviction petition, on or about November 30, 2009.

6   Approximately 10 months later, with the state post-conviction petition still pending,

7   petitioner mailed a proper person federal petition to the Clerk of this Court for filing on or

8   about October 12, 2010.

9   The Court appointed counsel taking into account, *inter alia*, the minimum consecutive

10  sentence of 30 years commencing in 2003 along with petitioner's then-current age in 2010

11  of approximately 73 years, the presentation of a competency issue on direct appeal, and the

12  number and complexity of the potential claims and procedural issues.

13  It appears from the filings herein and review of the state district court's online records

14  that proceedings on petitioner's state petition are ongoing in the district court.  Federal habeas

15  counsel has entered an appearance in the district court and filed a supplemental state

16  petition, the State has answered, and petitioner has filed a counseled reply.[2]

17  ***Exhaustion***

18  Petitioner acknowledges that Grounds 1, 2, 4(b) and 8 are not exhausted.  Grounds

19  1 and 2 present claims of ineffective assistance of trial counsel; Ground 4(b) presents a

20  challenge to the sufficiency of the evidence of intimidating or bribing a witness; and Ground

21  8 presents claims of ineffective assistance of appellate counsel.  The claims in particular of

22  ineffective assistance of counsel are not exhausted at this point given that petitioner filed the

23  federal petition before the conclusion of the state post-conviction proceedings.

24  ───────────────

25  [1] Indexed chronological state court record exhibits corresponding to the procedural recital herein may
    be found at ## 17-24 and 31.  The Court in the main dispenses with making specific record cites herein as to
26  procedural background that is essentially undisputed and/or is readily confirmed from the chronologically-
    indexed state court record exhibits or the federal record.
27
    [2] Nothing in the Court's orders herein spoke to federal habeas counsel appearing in the state court
28  proceedings.

Respondents contend that parts of Grounds 3, 4(a), 5, 6 & 7 also are not exhausted.

As discussed, *infra*, a number of additional claims, including aspects of the cumulative error claims in Ground 9, are not exhausted.

Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts.  To satisfy this exhaustion requirement, the claim must have been fairly presented to the state courts completely through to the highest court available, in this case the Supreme Court of Nevada.  *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*, 329 F.3d 1069, 1075 (9th Cir. 2003).  In the state courts, the petitioner must refer to the specific federal constitutional guarantee and must also state the facts that entitle the petitioner to relief on the federal constitutional claim.  *E.g., Shumway v. Payne*, 223 F.3d 983, 987 (9th Cir. 2000).  That is, fair presentation requires that the petitioner present the state courts with both the operative facts and the federal legal theory upon which the claim is based.  *E.g., Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005).  The exhaustion requirement insures that the state courts, as a matter of federal-state comity, will have the first opportunity to pass upon and correct alleged violations of federal constitutional guarantees.  *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Under *Rose v. Lundy*, 455 U.S. 509 (1982), a mixed petition presenting both exhausted and unexhausted claims must be dismissed without prejudice unless the petitioner dismisses the unexhausted claims or seeks other appropriate relief.

### Ground 3

In Ground 3, petitioner alleges that he was denied rights to due process, a reliable sentence, effective assistance of counsel, and to be free from self-incrimination in violation of the Sixth and Fourteenth Amendments when the State allegedly improperly commented on his post-arrest silence at trial by eliciting testimony from an officer witness that she ceased any further questioning after Navas invoked his right to have an attorney present.

Respondents contend that Ground 3 is unexhausted to the extent that petitioner alleges that:  (a) the prosecutor engaged in prosecutorial misconduct in eliciting the testimony

1   in question rather than claiming only that the officer witness violated his rights with the

2   testimony; and (b) trial counsel was ineffective for failing to object to the testimony.

3        At trial, the prosecutor questioned Sparks Police Department Officer Jean Walsh

4   regarding her arrest and subsequent interview of Navas. The amended complaint extensively

5   sets forth what would appear on this initial review to be entirely unobjectionable and proper

6   testimony by Officer Walsh regarding her advising Navas of his *Miranda* rights, his agreement

7   to speak with her after having been so advised, and what Navas said in response to her

8   questioning. The actual claim of constitutional error appears to be grounded upon the

9   following single question and answer:

10       Q:   At the conclusion of the interview, what happened?

11

12       A:   He eventually invoked his right to have an attorney present
             and at that time I discontinued any of my questioning.

13   #20, Ex. 123, at 46.

14       In Ground 3, petitioner alleges that the prosecutor engaged in misconduct when she

15   elicited this testimony. Petitioner further alleges that, while the prosecutor did not refer to the

16   invocation in her closing argument, her "mere reminder of Walsh's testimony [in her closing

17   argument] likely place[d] Navas' invocation in the forefront of the jury's mind." #16, at 27.

18       In contrast, on direct appeal, petitioner presented no claim to the Supreme Court of

19   Nevada that the prosecutor committed misconduct, that she intentionally elicited testimony

20   regarding his invocation, or that she thereafter emphasized Walsh's otherwise

21   unobjectionable testimony in her closing argument in order to keep petitioner's invocation in

22   the forefront of the jury's mind. See #22, Ex. 154, at 16-17.

23       Petitioner maintains that improper trial testimony necessarily requires the actions of two

24   people – the lawyer asking the question and the witness answering the question. However,

25   that is not inexorably the case with regard to the impropriety of a response. Here, the

26   prosecutor asked an open-ended question, as must be done on direct; and the witness

27   provided an improper response. Petitioner's "it takes two to tango" argument glosses over

28   the fact that witnesses sometimes give improper or nonresponsive answers to questions that

are not necessarily improper or designed to elicit an improper response.  The federal claim that the prosecutor intentionally elicited the improper response and then further improperly sought to capitalize on the response in her closing argument fundamentally alters the claim presented in state court and seeks to place the claim on a considerably stronger foundation.  A claim based upon intentional prosecutorial misconduct in eliciting such improper testimony and capitalizing on it in closing argument is markedly different from a claim based instead only upon the isolated improper response by the witness herself.   Ground 3 therefore is unexhausted to that extent.

Regarding the ineffective-assistance claim, petitioner contends that the lack of exhaustion should be excused because there is an absence of available state corrective process for purposes of 28 U.S.C. § 2254(b)(1)(B)(i).  Petitioner urges that the law of the case doctrine effectively bars litigation of the ineffective-assistance claim because the state supreme court already has held on the substantive claim that petitioner cannot demonstrate that the error affected his substantial rights.  He maintains that the law of the case therefore precludes him from establishing prejudice on the ineffective-assistance claim.

Petitioner cites no federal case law holding that a state court's rejection of a substantive claim deprives a petitioner of any available state corrective process to raise a related claim of ineffective assistance of counsel due to application of law of the case.  Even prior to the passage of AEDPA, the Supreme Court rejected the premise that a prior rejection of even the very same argument eliminated the requirement that the state courts have the first opportunity to consider a constitutional claim.  In *Engle v. Isaac*, 456 U.S. 107 (1982), the Court stated:

> If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim.  Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid.

456 U.S. at 130.  Under AEDPA, § 2254(c) states clearly that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State, within the

meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." Navas indisputably has the right under the law of Nevada to raise the question presented in the ineffective-assistance claim in a state post-conviction petition. The prospect that the claim perhaps ultimately may be rejected on the merits does not lead to the conclusion that petitioner has no available procedure to raise the unexhausted claim.

A holding that petitioner has no available state procedure to raise the ineffective-assistance claim in Ground 3 would be especially bizarre in this case given that petitioner currently has a parallel state post-conviction proceeding pending in the state courts where he currently is pursuing ineffective-assistance claims. The Court will make no such holding.

Petitioner further did not present federal legal theories based upon denial of rights to due process and a reliable sentence on direct appeal to the state supreme court. Fair presentation requires that the petitioner present the state courts with both the operative facts and each federal legal theory upon which his claim is based. *E.g., Castillo*, 399 F.3d at 999. Petitioner's scattershot addition of multiple additional legal claims alleging violations of additional federal constitutional rights renders Ground 3 unexhausted to that extent.[3]

Ground 3 therefore is unexhausted to the extent that petitioner claims that: (a) the prosecutor engaged in prosecutorial misconduct, including but not limited to allegations that the prosecutor intentionally elicited testimony from the officer that the interview concluded when petitioner invoked his right to counsel and thereafter indirectly commented upon this invocation by referring to the officer's testimony in closing argument; (b) trial counsel was ineffective for failing to object to the testimony as to his invoking his right to counsel; and (c) he was denied rights to due process and to a reliable sentence.

/ / / /

---

[3]The potential upside from such scattershot allegations, which are interspersed within multiple grounds in the amended petition without apparent consistency, is difficult to discern,. For example, if petitioner were to not prevail on a claim based upon an impairment of the right to be free from compulsory self-incrimination, the prospect is nil that he then instead would be able to prevail in this context based upon an alleged denial of a right to a reliable sentence.

***Ground 4(a)***

In Ground 4(a), petitioner alleges that he was denied rights to due process and effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments because:  (1) the evidence allegedly was insufficient to sustain the conviction for sexual assault of a child; (2) the prosecutor engaged in prosecutorial misconduct in her closing argument by misrepresenting the testimony of M.N., the victim in question; and (3) trial counsel did not object to the prosecutor's alleged misrepresentations.

Respondents contend that Ground 4(a) is unexhausted to the extent that petitioner alleges that:  (a) he is actually innocent of sexual assault of M.N.; (b) the prosecutor engaged in prosecutorial misconduct in her closing argument by misrepresenting M.N.'s testimony; and (c) trial counsel did not object to the prosecutor's alleged misrepresentations.

Petitioner does not contest that these claims are unexhausted.  #31, at 6, lines 12-13.

***Ground 5***

In Ground 5, petitioner alleges that he was denied rights to a speedy trial, due process, and effective assistance of counsel in violation of the Fifth, Sixth, and Fourteenth Amendments because his trial occurred nearly four years after his arraignment and because three years of the delay allegedly ensued from the trial judge and defense counsel violating petitioner's constitutional rights.

Respondents contend that Ground 5 is not completely exhausted because petitioner presents extensive factual allegations on federal habeas review that fundamentally alter the claim presented to the Supreme Court of Nevada.

As backdrop, Navas was arrested on July 2, 2002, and he initially was charged by criminal complaint on July 9, 2002.  In October 2002, Navas waived a preliminary hearing in connection with an anticipated plea deal.  However, he then opted to not go forward with the plea deal in the district court, and the matter was remanded for a preliminary hearing.[4]

/ / / /

---

[4]#17, Exhs. 10-11; #18, Ex. 32, at 3.

-7-

1         After additional proceedings in the justice court and district court, the matter was set

2    to go to trial on Monday, July 28, 2003.  However, Navas entered *nolo contedere* pleas on the

3    Wednesday before the Monday trial, on July 23, 2003.[5]

4         The plea colloquy does not reflect equivocation by Navas in entering the pleas.  As his

5    September 24, 2003, sentencing approached, however, Navas contacted both the trial judge

6    and his retained counsel expressing his desire to withdraw the pleas.  At the sentencing,

7    counsel stated that he would not be filing a motion to withdraw plea because he had no

8    ethical basis to contend that the plea was deficient.  The court proceeded with sentencing.[6]

9         Retained counsel timely appealed, and counsel later filed a fast track statement raising

10   a sentencing issue.  During the appeal, Navas filed, *inter alia*, a proper person motion to

11   withdraw counsel and advised the state supreme court that he had discharged counsel.  On

12   April 25, 2004, the state supreme court granted Navas' motion and remanded the matter for

13   the limited purpose of securing new counsel, whether retained or appointed as appropriate.[7]

14        Following the appointment of substitute counsel, the state supreme court ultimately

15   held on January 20, 2005, that the decision of whether to seek to withdraw a plea was  Navas'

16   alone to make.  The court vacated the judgments of conviction and remanded for the purpose

17   of allowing Navas the opportunity to file a counseled motion to withdraw his pleas.  The state

18   supreme court held that any such motion filed should be adjudicated under the more lenient

19   standard applicable to motions filed before sentencing.  Under that standard, the district court

20   may grant the motion in its discretion for any substantial reason and if it is fair and just.[8]

21        On remand, the state district court granted Navas' motion to withdraw his pleas under

22   the foregoing standard on July 21, 2005.  Following a competency determination, Navas

23   thereafter was convicted in a jury trial that commenced on February 6, 2006.

---

25   [5]#17, Exhs. 1 & 2; #18, Exhs. 30-32.

26   [6]#18, Exhs. 32, 33 & 36.

27   [7]#18, Exhs. 38, 44-46, 54-55, 58 & 72.

28   [8]#18, Ex. 89.

On direct appeal, petitioner's argument in support of his claim that he was denied his right to a speedy trial included the following operative factual allegations:

> In this case, the length of the delay was excessive, approaching four years. Though it might appear at first glance that NAVAS contributed to the reason for the delay, eventually the District Court concluded that his due process rights had been violated and allowed him to withdraw his plea and go to trial. Indeed, depending on the outcome of this appeal, there may still exist valid claims of ineffective assistance of counsel where this matter is concerned. It appears that, upon returning to Court after his plea was withdrawn, NAVAS did assert his right to a speedy trial. (AA I, 144). Finally, due to the excessive length of the delay, prejudice is presumed. The record shows that NAVAS suffered fairly serious health problems as a consequence of the proceedings, and it is not unreasonable to conclude that these health problems contributed to his irrational state of mind.
>
> . . . . .
>
> . . . .  The fact that more than three and a half years elapsed after the charges were filed before NAVAS was given a trial, presumes prejudice under the Fifth, Sixth and Fourteenth Amendments.
>
> During the elapse [sic] of time, his ability to defend against the State's case was diminished.  Further, it is also clear from the record that NAVAS's health deteriorated significantly during the time frame and as a result of the case. As NAVAS explained to the Court: "And I am begging you, please. I say, with all due respect, I am sick. I can't hardly hear now. I carry my medicine over here heart pills and everything... And that is what I am getting out of this case. That's how I have been getting sick." (AA I, 163).

#22, Ex. 154, at 11-12.

In his direct appeal briefing, petitioner did not refer, even in the statement of the case, to any operative facts regarding his pre-sentencing effort to withdraw his plea in 2003 and the proceedings that followed.  Rather, petitioner's factual recital instead related simply that judgment was entered on September 24, 2003, and that he thereafter moved to withdraw his plea on May 31, 2005.[9]  Petitioner further did not refer to any specific alleged procedural irregularities by either the court or counsel after the motion to withdraw was filed in 2005 as a factor contributing to additional delay.

---

[9]#22, Ex. 154, at 3.

In part pertinent to the present issue, the Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> . . . Navas argues that his constitutional right to a speedy trial was violated. Specifically, he argues that the nearly four year delay was excessive-that the length of the delay created a presumption of prejudice or, in the alternative, that he was prejudiced by the delay because he suffered from fairly serious health problems which diminished his ability to defend against the State's case.
>
> . . . . .
>
> We conclude that Navas' claim that his speedy trial right was violated lacks merit. Navas' conviction was vacated, and he was subsequently tried and convicted of the same charges. It is not a violation of a defendant's speedy trial rights when a delay is caused by the vacation of a defendant's conviction.  In *United States v. Ewell*, the United States Supreme Court held that a 19-month delay was not a violation of Ewell's speedy.trial rights because his original conviction had been vacated on appeal. While the overall delay, from his original arraignment to the time he was brought to trial, was lengthy, most of the delay was due to Navas' successful withdrawal of his plea of nolo contendere. Navas originally waived his speedy trial right at his arraignment on January 23, 2003. He subsequently pleaded nolo contendere and was sentenced. Navas' motion to withdraw his plea was granted, and he was arraigned again on August 2, 2005. At counsel's request, trial was set for October 17, 2005. Counsel then requested that trial be continued so that Navas' competency could be evaluated. Navas was found competent on November 15, 2005.  Thereafter, trial was set for February 6, 2006, which was the earliest available date for the State, counsel, and the district court. Based on the record before us, we conclude that the length and basis for the delay were not unreasonable.
>
> Additionally, Navas has failed to allege how he was prejudiced by the delay except that the length of delay requires that prejudice is presumed and that his physical health has deteriorated. First, Navas argues that the length of the delay created a presumption of prejudice.  In Doggett v. United States, the United States Supreme Court held that delay of more than a year creates a presumption that a defendant has been prejudiced. Here, the delay was not caused by the State, rather it was due in large part to Nava's withdrawal of his plea and the subsequent competency determination. Given the reasons for the delay, we conclude that the presumption of prejudice does not apply.  Since the presumption of prejudice does not apply, Navas must allege specific instances of prejudice. "Bare allegations of impairment of memory, witness unavailability, or anxiety, unsupported by affidavits or other offers of proof, do not demonstrate a reasonable possibility that the defense will be impaired at trial or that defendants have suffered other significant

-10-

1
2
3
4

> prejudice."   Navas has only alleged that his defense was diminished and his deteriorating physical health affected his ability to assist his counsel. Navas has not explained exactly how his deteriorating physical health affected his ability to assist counsel, only that it may have affected his mental health. Navas' vague allegations of prejudice, are insufficient to support a claim that his constitutional right to a speedy trial was violated.

5   #22, Ex. 165, at 4-7 (citation footnotes omitted).

6   Respondents contend that Ground 5 is not completely exhausted because petitioner

7   presents extensive factual allegations fundamentally altering the claim presented to the state

8   supreme court as to the reasons for the delay, petitioner's invocation of his speedy-trial right,

9   and prejudice.

10   The Court is not persuaded that petitioner has fundamentally altered the exhausted

11   claim by referring to various counseled and proper person invocations of speedy trial rights.

12   The references in the amended petition to assertions by petitioner in 2005 and 2006 largely

13   correlate to similar discussion in the direct appeal briefing, at least of similar invocations

14   during the same general time frame.[10]  It would appear to have been an accepted on the state

15   appeal that petitioner had invoked at least his state statutory right to a speedy trial following

16   upon the grant of his motion to withdraw his plea.

17   The Court is persuaded that Ground 5 is not exhausted, however, to the extent that

18   plaintiff alleges therein operative facts regarding his requests and efforts to withdraw his pleas

19   from the entry of the pleas on July 23, 2003, up to the filing of a counseled motion to withdraw

20   plea on May 31, 2005.  In order to fairly present and exhaust a claim, a petitioner must

21   present the reviewing state court with both the operative facts and the federal legal theory

22   upon which his claim is based.  *E.g., Castillo*, 399 F.3d at 999.  On direct appeal, petitioner

23   presented this claim to the Supreme Court of Nevada on the factual premise that judgment

24   was entered on September 24, 2003, and then, nearly two years later, he filed a successful

25   motion to withdraw plea on May 31, 2005.  Against that presented factual backdrop,

26

27
28   [10]See #22, Ex. 154, at 3, 7 & 8.  The Court notes, however, that an invocation of the state statutory speedy trial right, with its short sixty-day period, is not necessarily the same as invoking the constitutional speedy trial right.

petitioner's allegation that the district court found that "his due process rights had been violated and allowed him to withdraw his plea" spoke to the validity of the plea proceeding, not to a denial of a prior request to file a motion to withdraw his plea.[11]   No operative facts concerning the latter circumstance was presented to the state supreme court on direct appeal. Petitioner's extensive factual presentation now on federal habeas review, in which he seeks to establish that the delay was unjustified because he was denied an opportunity to file a motion to withdraw his plea for nearly two years, fundamentally alters the claim presented to the state supreme court.  Petitioner's suggestion that the state supreme court was required to cull through the extensive prior state record to assemble the factual scenario upon which he now bases the claim is unpersuasive.

The Court further is persuaded that petitioner seeks to fundamentally alter and strengthen the claim by referring to alleged action by substitute counsel further delaying his 2006 trial because of duties in another case.  No such factual scenario was fairly presented to the state supreme court on direct appeal.

Finally, the Court is persuaded that petitioner fundamentally alters and strengthens the claim by seeking to establish prejudice based upon operative facts other than the factual assertions regarding health issues and an alleged attack by guards actually made in the state supreme court briefing.[12]   In the amended petition, presents extensive specific factual allegations regarding experiencing oppressive incarceration conditions, being deprived of food and sleep, being depressed, losing his job, losing his home to foreclosure, experiencing

---

[11] Indeed, petitioner continues to urge on federal review that the district court held on the motion to withdraw "that the record did not demonstrate that Mr. Navas' plea was voluntarily, knowingly, or intelligently entered," citing to page 6 of the relevant transcript. See #16, at 38.  At least on this preliminary review, the Court has been unable to locate a holding by the district court that the pleas were not voluntarily, knowingly or intelligently entered.  As noted previously herein, the motion to withdraw plea was decided under the more lenient pre-sentencing standard, which did not require such a holding for a grant of the motion.  Nor has the Court discerned as yet on preliminary review any alleged constitutional flaw in the plea colloquy.  Under the state supreme court's holding, petitioner improperly was denied an opportunity to pursue a motion to withdraw plea.  However, that error does not necessarily signify that the plea proceeding itself was constitutionally defective, as a plea could be withdrawn under the pre-sentencing standard even if constitutionally sufficient.

[12] See #22, Ex. 154, at 7 & 11-12.

-12-

anxiety over his son's fate and his possible exposure to drugs and criminal activity after the loss of the home, loss of the benefit of representation by his original retained counsel in numerous specified respects, being subjected to alleged ineffective assistance of appointed replacement trial counsel again in numerous specified respects, facing older and more sophisticated complaining witnesses who tailored their testimony to best serve the State's case, and facing "bleached out" testimony by the victims whereby they sought to make their testimony so vague that it could not be impeached effectively.[13]

None of these extensive factual specifics were presented to the Supreme Court of Nevada.  On direct appeal, Navas relied principally upon a presumption of prejudice that he maintained was applicable due to the length of the delay.  The state supreme court rejected that legal argument and based its holding rejecting the claim upon the conclusion that petitioner's conclusory and vague allegations of prejudice were insufficient to sustain the claim.  Petitioner's effort to now present an extensive array of specific factual allegations in place of the conclusory claim presented to the state supreme court that was rejected as conclusory clearly fundamentally alters the claim presented in state court.  Petitioner's suggestion that the state supreme court *sua sponte* should have independently culled through the state record to collect and assemble such a litany of alleged calamities is even less persuasive here, assuming *arguendo* that an appellate court even could have done so.[14]

The extensive allegations of lost effective performance by retained original counsel and of corresponding deficient performance by appointed replacement counsel in particular fundamentally alter the conclusory claim of prejudice presented to the state supreme court. Nothing in the briefing on direct appeal remotely suggested that petitioner then was seeking to use the speedy-trial substantive claim in effect as a claim of ineffective assistance of

---

[13]See #16, at 38-40 & 41-44.

[14]Petitioner concedes that the factual basis for the allegations regarding what his original trial counsel allegedly would have done could not have been found in the lower court record.  #31, at 6 n.1.  Such wholly extra-record evidence thus could not be considered on deferential AEDPA review even if petitioner overcame the lack of exhaustion brought about by the extensive new allegations made for the first time in federal court.

1   replacement trial counsel.  On federal habeas review, petitioner essentially is seeking to

2   bootstrap the speedy-trial claim in Ground 5 to also present a wide-ranging claim of ineffective

3   assistance of trial counsel.  This effort clearly fundamentally alters the conclusory claim that

4   was exhausted.[15]

5        Additionally, the only legal theory presented in state court was based upon denial of

6   the right to a speedy trial.  Petitioner did not present a claim based upon a denial of either a

7   right to due process (separate and apart from incorporation of the right to a speedy trial) or

8   a right to effective assistance of counsel.

9        Petitioner contends that he no longer has a remedy in state court because of the

10  Nevada doctrine of law of the case.  Petitioner refers to the principle that the Nevada doctrine

11  of law of the case cannot be avoided by a more detailed and precisely focused argument.

12  *See Hall v. State*, 91 Nev. 314, 535 P.2d 797 (1975).  The Court rejects this argument for

13  reasons substantially similar to those discussed as to Ground 3.  Petitioner cites no federal

14  case law under which a petitioner may present a conclusory claim in state court, then present

15  an extensively factually supported claim on federal habeas review, and thereafter avoid the

16  exhaustion requirement on the premise that the fundamentally-altered claim would not be

17  considered due to law of the case.  The Supreme Court of Nevada has rejected the

18  proposition that the Nevada law of the case doctrine applies inflexibly to deny the court the

19  authority to consider a claim presented on later review, and it recognizes that the doctrine

20  potentially is subject to exceptions.  *See Hsu v. County of Clark*, 123 Nev. 625, 629-33 &

21  n.26, 173 P.3d 724, 728-30 & n. 26 (2007).  It is a long-established principle of Nevada law

22  that the law of the case doctrine does not bar departure from a prior holding where continued

23  adherence to the prior decision under law of the case would work a manifest injustice.  123

24

25        [15]Petitioner's logic as to causation in this regard is subject to some question.  The pretrial delay did

26  not cause petitioner to lose the benefit of the allegedly effective performance of original counsel.  Navas
    discharged his original counsel.  He did so during the first appeal after counsel would not pursue a motion to

27  withdraw his pleas, not because of pretrial delay.  Nor did the delay cause appointed replacement counsel to
    allegedly be ineffective.  If anything, pretrial delay – standing alone – tends to facilitate trial preparation.  Not

28  every adverse circumstance encountered by a defendant after arrest necessarily results from pretrial delay.

Nev. at 631-32, 173 P.3d at 729.  Under the principles of comity that inform the exhaustion requirement, the Supreme Court of Nevada should have the first opportunity to consider application of its law of the case doctrine and potentially the merits of the fundamentally-altered and unexhausted claim.  The Court cannot assume futility of exhaustion in the presence of an explicitly flexible and discretionary Nevada doctrine of law of the case.

Ground 5 therefore is unexhausted to the extent that petitioner alleges:  (a) operative facts regarding his requests and efforts  to withdraw his pleas from the entry of the pleas on July 23, 2003, up to the filing of a counseled motion to withdraw plea on May 31, 2005; (b) that substitute counsel further delayed his 2006 trial because of duties in another case; (c) operative facts seeking to establish prejudice other than the factual assertions regarding health issues and an alleged attack by guards actually made in his opening brief on direct appeal; and (d) claims of denials of rights to due process and effective assistance of counsel.

**Ground 6**

In Ground 6, petitioner alleges that he was denied rights to a fair trial, a trial before an impartial jury, due process, effective assistance of counsel and equal protection in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments because the jury instruction on reasonable doubt allegedly improperly minimized the State's burden of proof.

The following instruction was given at trial:

> A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable, must be actual, not mere possibility or speculation.

#20, Ex. 119, Jury Instruction No. 14 (numbering at bottom of instruction pages).

Petitioner alleges in Ground 6:  (a) that "[t]he principal defect of the instruction is the second sentence:  reasonable doubt 'is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life;'" (b) that "[t]he final sentence of the instruction is also constitutionally infirm . . . [in stating] that 'doubt, to be reasonable, must be actual, not mere possibility or speculation;'" and (c) that he was denied effective assistance

-15-

of counsel when trial counsel failed to object to the giving of the instruction, failed to propose an alternate instruction, and instead endorsed the allegedly deficient instruction in his closing argument.  #16, at 44-46.

Respondents contend that only a claim of jury instruction error challenging the "weighty affairs of life" language was exhausted.  Respondents further contend that petitioner did not exhaust claims of an Eighth Amendment violation or of violations of rights to a fair trial, due process of law, a trial before an impartial jury, equal protection, and to effective assistance of counsel.

Petitioner did not exhaust a claim challenging the final sentence in the instruction stating that 'doubt, to be reasonable, must be actual, not mere possibility or speculation." The only alleged defect identified on direct appeal was with the second sentence using the "more weighty affairs of life" language.[16]  Petitioner's arguments to the contrary are unpersuasive.

Petitioner urges that "the larger claim" was that the entire instruction, which he quoted in full, was unconstitutional because it misstated the reasonable doubt standard.  Petitioner presented no such "larger claim" in his direct appeal brief.  Again, in order to fairly present and exhaust a claim, a petitioner must present the reviewing state court with both the operative facts and the federal legal theory upon which his claim is based.  *E.g., Castillo*, 399 F.3d at 999.  Petitioner argued that the "weighty affairs of life" sentence in the instruction rendered the instruction unconstitutional.  That argument did not fairly present and exhaust any and all other arguments regarding other language in the instruction that petitioner thereafter might wish to make.  Nor did quoting the entire charge  fairly present and exhaust any and all other arguments that petitioner thereafter might wish to make regarding language other than the language that he specifically challenged.

Petitioner further relies on the principle that a court is required to analyze instructions as a whole.  Such review, however, clearly does not involve consideration of any and all unraised claims of error that thereafter potentially may be brought to challenge a charge.

---

[16]#22, Ex. 154, at 17-19.

1    Petitioner contends that the Supreme Court of Nevada decided the unexhausted claim

2    of jury-instruction error when it found that the entire instruction was constitutional.  Petitioner

3    maintains that the state high court adjudicated the unexhausted claim when it stated:  "We

4    have repeatedly upheld the constitutionality of the reasonable doubt instruction and we

5    decline to revisit the issue here."

6    However, the state supreme court stated in full:

7        Fifth, Navas complains that the phrase "more weighty
         affairs of life" in the reasonable doubt instruction is
8        unconstitutional and lessens the State's burden. The instruction
         given comports with NRS 175.211.  We have repeatedly upheld
9        the constitutionality of the reasonable doubt instruction and we
         decline to revisit the issue here.[FN19]
10
         [FN19]See Garcia v. State, 121 Nev. 327, 345, 113
11       P.3d 836, 847 (2005); Bolin v. State, 114 Nev. 503,
         530, 960 P.2d 784, 801 (1998), abrogated on other
12       grounds by Richmond v. State, 118 Nev. 924, 59
         P.3d 1249 (2002); Holmes v. State, 114 Nev. 1357,
13       1365-66, 972 P.2d 337, 342-43 (1998).

14   #22, Ex. 165, at 9.  Nothing in this passage reflects a ruling on the merits as to any claim

15   other than the one that petitioner presented.  The court clearly was not adjudicating any and

16   and all unraised claims of error that thereafter potentially might be brought to challenge the

17   instruction.  Nor did its mere citation to prior cases rejecting prior challenges to the instruction

18   constitute a current holding on the merits of any claim other than the claim then before the

19   court.  The Supreme Court of Nevada did not decide the merits of the unexhausted claim on

20   Navas' direct appeal.

21   The Court rejects petitioner's argument that he has no available remedy for raising the

22   unexhausted claim substantially for the reasons discussed under Grounds 3 and 5.  See text,

23   *supra*, at 5-6 & 14-15.  Neither disposition of a different challenge to the instruction on his

24   appeal nor *arguendo* prior rejections of the unexhausted claim in other cases renders state

25   corrective process futile or unavailable.  *Cf. Engle v. Isaac, supra.*

26   Petitioner's new additional claim therefore is unexhausted.

27   Turning to the multiple parallel constitutional allegations, petitioner exhausted legal

28   claims of denials of rights to due process, a fair trial and to an impartial jury.  Reliance upon,

-17-

*inter alia*, *In re Winship*, 397 U.S. 358 (1970), exhausted a legal theory based upon the due process theory underpinning that seminal decision.  As the Court has observed in prior cases, there further is no distinction of substance between a claim of a denial of due process and a claim of a denial of a right to a fair trial.  Finally, petitioner specifically invoked the right to a jury trial, which sufficiently encompasses a right to an impartial jury in this context.

Petitioner did not exhaust, however, additional legal claims based upon a denial of equal protection and of a violation of the Eighth Amendment.

Petitioner contends that he "raised a broad claim . . . under the Fifth, Sixth, and Fourteenth Amendments," that he "did not limit his claim to particular provisions of those amendments," and that "it was not necessary for him to do so to exhaust the claim."  He suggests that he need only simply label a claim as "federal" to exhaust any and all federal claims that he thereafter may wish to present on federal review.  #31, at 9.

Petitioner thus in essence posits that his mere reference to a numbered constitutional amendment exhausts any and all possible claims that might be asserted under the amendment unless he expressly disclaims reliance upon a particular claim.  Indeed, he posits that he need only refer to claims as "federal" to exhaust all specific constitutional claims that he thereafter might assert.  Quite simply, that is not how exhaustion works.  Rather, it is established law that general appeals to broad principles such as "due process" or "a fair trial" do not exhaust any specific federal constitutional claim.  *See, e.g., Castillo*, 399 F.3d at 999.  *A fortiori*, merely invoking numbers of constitutional amendments or identifying claims as "federal" does not exhaust any specific federal constitutional claim.  Fair presentation instead requires that the petitioner present the state courts with both the operative facts *and each federal legal theory* upon which his claim is based. *Id.*  Petitioner did not exhaust a claim of a denial of equal protection or of a violation of the Eighth Amendment, which was not even invoked by number in the claim exhausted on direct appeal.[17]

_____

[17]Following upon note 3, *supra*, the Court is unable to discern the upside from these seemingly episodic scattershot assertions of multiple constitutional claims – which appear in the federal habeas claims

(continued...)

-18-

1    With regard to the unexhausted claim of ineffective assistance of counsel, petitioner

2 adopts by reference the same exhaustion argument that he made as to the unexhausted

3 ineffective-assistance claim in Ground 3.  The Court rejects the argument for the reasons

4 discussed as to that claim.  See text, *supra*, at 5-6.

5    Ground 6 therefore is unexhausted to the extent that petitioner alleges that:  (a) the

6 final sentence of the instruction is constitutionally infirm in stating that "doubt, to be

7 reasonable, must be actual, not mere possibility or speculation;" (b) the alleged jury instruction

8 error denied him equal protection and violated the Eighth Amendment; and (c) he was denied

9 effective assistance of counsel when trial counsel failed to object to the giving of the

10 instruction, failed to propose an alternate instruction, and instead endorsed the allegedly

11 deficient instruction in his closing argument.

12    ***Ground 7***

13    In Ground 7, petitioner alleges that he was denied rights to a fair trial, due process, and

14 effective assistance of counsel in violation of the Fifth, Sixth and Fourteenth Amendments

15 regarding competency.  He alleges that:  (a) the competency evaluation was inadequate

16 because, *inter alia*, it was conducted by psychologists rather than psychiatrists and was based

17 upon inadequate review of insufficient materials; (b) he was not afforded a competency

18 hearing; (c) the trial court thereafter failed to review Navas' competency on a continuing basis

19 based upon events subsequent to the competency evaluation; and (d) he was denied

20 effective assistance of counsel when trial counsel failed to request a hearing on his

21 competency, cross-examine the psychologists, and present evidence on the issue.

22

23    [17](...continued)

24 in the amended petition with no apparent consistency.  It is not realistically conceivable that a court would
deny relief on this claim under *Winship* and its progeny but then nonetheless grant relief under either the
Equal Protection Clause or the Eighth Amendment.  That is, if petitioner cannot prevail under *Winship* and the

25 Due Process Clause, he will not be able to prevail under any of the other provisions invoked.  With particular
regard to equal protection, not every dissimilar treatment of individuals violates the Equal Protection Clause,

26 as, indeed, most dissimilar treatment does not.  The circumstances under which the Equal Protection Clause
will provide a basis for reversal based on jury instruction error will be exceedingly few and far between even

27 where, through alleged error, a court does not treat a particular defendant the same as other defendants.
That is, absent the trial court giving an instruction telling jurors to apply an impermissible criterion such as

28 race, the Equal Protection Clause has no realistically conceivable application here.

Respondents contend that petitioner did not exhaust claims based upon the competency evaluation being inadequate, his not being afforded a competency hearing, and being denied effective assistance of counsel.

The allegations regarding the alleged inadequacy of the competency evaluation fundamentally alter the claim presented to the state supreme court.  Petitioner made no claim on direct appeal that the competency evaluation was deficient in any respect.  He instead argued that the trial court should have pursued additional inquiry and held a hearing into Navas' competency because of his continued allegedly irrational behavior and speech.  A factual argument that the competency evaluation conducted by the mental health professionals itself was inadequate fundamentally alters the claim presented to the state supreme court.  That claim proceeded on the premise that further inquiry was required due to Navas' behavior notwithstanding the competency finding, not due to any alleged inadequacy of the finding.[18]  Petitioner, again, must fairly present the operative facts of his claims to exhaust them in state court.  He did not do so in this regard.

Petitioner, however, did fairly present a claim based upon a competency hearing not being held.[19]

The claim of ineffective assistance of trial counsel is unexhausted.  Petitioner adopts by reference the same exhaustion argument that he made as to the unexhausted ineffective-assistance claim in Ground 3.  The Court again rejects the argument for the reasons discussed as to that claim.  See text, *supra*, at 5-6.  Petitioner's argument that the state supreme court's rejection of the substantive claim necessarily precludes any relief on the ineffective-assistance claim carries even less force here.  Even *arguendo* applying law of the case, rejection of a claim challenging the competency determination on the record presented to the trial court does not necessitate the rejection of a claim that trial counsel should have done more to present more of a record establishing his alleged lack of competency.

_____

[18]See #22, Ex. 154, at 5-7 & 8-10.

[19]See *id.*, at 5, lines 1-8; at 6-8; at 9, lines 11-28; & 10.

1    Ground 7 therefore is unexhausted to the extent that petitioner alleges that:  (a) the

2    competency evaluation was inadequate because, *inter alia*, it was conducted by psychologists

3    rather than psychiatrists and was based upon inadequate review of insufficient materials; and

4    (b) he was denied effective assistance of counsel when trial counsel failed to request a

5    hearing on his competency, cross-examine the psychologists, and present evidence on the

6    issue.

7        ***Ground 9***

8        In Ground 9, petitioner alleges that he was denied due process in violation of the Fifth

9    and Fourteenth Amendments because of the cumulative effect of the errors "raised on direct

10   appeal, in [the still-pending] state habeas proceedings, and in this [federal] petition."  #16, at

11   50.

12       The Court *sua sponte* holds that Ground 9 is not exhausted to the extent that it

13   presents claims of cumulative error based on alleged errors raised in the still-pending state

14   post-conviction proceedings and on unexhausted claims of error in the federal petition.  The

15   only claim of cumulative error exhausted up to this point is a claim of cumulative error based

16   upon the combined effect of the alleged errors raised on direct appeal.[20]  The Supreme Court

17   of Nevada has not yet considered any claim of cumulative error based upon the combined

18   effect of the alleged trial errors together with the alleged errors raised on state post-conviction

19   review.  Moreover, a claim of alleged cumulative error based upon unexhausted claims

20   presented in the federal petition will be exhausted only to the extent that a claim of cumulative

21   error based upon those alleged errors has been presented to the state supreme court.

22       Ground 9 therefore is not exhausted to the extent that it presents claims of cumulative

23   error based on any alleged errors other than those raised on direct appeal.

24                                   ***Motion to Stay***

25       The represented petitioner seeks a stay only under *Rhines v. Weber*, 544 U.S. 269

26   (2005), with no request for other stay relief in the alternative should a *Rhines* stay be denied.

27   _____

28       [20]#22, Ex. 154, at 19-20.

In order to obtain a stay under *Rhines* to return to the state courts to exhaust a claim or claims, a petitioner must demonstrate that there was good cause for the failure to exhaust the claims, that the unexhausted claims include at least one claim that is not plainly meritless, and that petitioner has not engaged in intentionally dilatory litigation tactics. *See* 544 U.S. at 278.

The precise contours of what constitutes "good cause" in this context remain to be fully developed in the jurisprudence. On the one hand, the Ninth Circuit has held that a requirement that the petitioner show "extraordinary circumstances" to obtain a stay does not comport with the good cause standard in *Rhines*. *See Jackson v. Roe*, 425 F.3d 654, 661-62 (9th Cir. 2005). On the other hand, *Rhines* instructs that a stay should be available only in "limited circumstances," such that the requirement of good cause therefore should not be interpreted in a manner that would render stay orders routine. *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008). Accordingly, a mere impression by a petitioner that a claim was exhausted is not sufficient to establish good cause for a failure to exhaust, given that, if it were, "virtually every habeas petitioner, at least those represented by counsel, could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay." *Id.* (emphasis in original).[21]

---

[21]Petitioner relies additionally upon Judge Reed's opinion in *Riner v. Crawford*, 415 F.Supp.2d 1207 (D.Nev. 2006). As Judge Reed noted in *Greene v. McDaniel*, No. 3:09-cv-00601 (D. Nev., April 4, 2012):

> In *Riner*, the Court's order was issued following a remand from the Ninth Circuit for reconsideration of its dismissal order in light of the intervening authority in *Rhines*. The Court did not hold that Riner either had or had not demonstrated good cause. The order instead gave Riner an opportunity to demonstrate good cause and the other requirements for a *Rhines* stay. Riner thereafter did not seek such a stay but instead sought reconsideration of the Court's prior holding that the claims in question were unexhausted. See,e.g., No. 3:99-cv-0258-ECR-RAM, #72. The published *Riner* decision therefore did not make a definitive holding as to good cause applicable to a then-attempted specific factual demonstration of good cause.

*Greene*, at 3 n.2. Prior decisions from a federal district court constitute only persuasive rather than binding authority within that district. Given Judge Reed's explanation of the procedural history in *Riner*, the Court is not inclined to accord the generalized discussion in passing there precedence over controlling expressions of

(continued...)

1   Petitioner contends that he has good cause for the failure to exhaust the claims of

2   ineffective assistance of counsel (and apparently only those claims) because the claims could

3   not be raised on direct appeal, the state post-conviction proceedings still are pending, and he

4   waited for nine months with no response from the state court before filing the federal petition.

5   Petitioner has described the most ordinary of circumstances. The fact that a petitioner

6   cannot raise ineffective-assistance claims on direct appeal does not provide good cause for

7   failing to then exhaust the claims through the available state post-conviction proceedings.

8   The fact that a state petition has been pending for nine months also does not provide good

9   cause for not litigating the state post-conviction proceedings to a conclusion before seeking

10  federal habeas relief. If the Court were to grant a stay based upon such an entirely run of the

11  mill situation, stay orders indeed would be rendered routine.

12  Petitioner refers to discussion in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), regarding

13  the filing of a protective federal petition. However, *Pace* discusses the filing of a protective

14  petition in a situation where there is a substantial question as to whether the pending state

15  petition is timely and thus statutorily tolls the federal limitation period. The filing of a protective

16  petition along with a possible federal stay in that circumstance eliminates the predicament for

17  the petitioner of litigating the state petition for several years only to find that the state's highest

18  court has rejected his arguments as to the timeliness of the state petition, thereby likely

19  effectively rendering a federal petition also untimely at that point. *See* 544 U.S. at 416-17.

20  *Pace* provides no support for a protective petition and stay here. The state petition

21  clearly is timely. Navas simply did not wait for the state proceedings to conclude.

22  The Court accordingly concurs with the alternative holding in *Brooks v. Williams*, 2011

23  WL 1457739, No. 2:10-cv-00045-GMN-LRL (D.Nev., Apr. 14, 2011):

24  > Petitioner has not demonstrated good cause for the failure
25  > to complete exhaustion in the state courts. At bottom, petitioner

26  ――――――――――――――

[21](...continued)

27  the standard from the Ninth Circuit in intervening cases such as *Wooten*. In a related vein, the expressions of
the district court on remand from the Supreme Court in *Rhines* do not constitute binding authority. The Court

28  will apply Ninth Circuit precedent.

simply has "jumped the gun" by filing a federal petition prior to the completion of timely-filed state post-conviction proceedings. A holding that the continuing pendency of the state proceedings constituted "good cause" in this context merely would encourage the essentially pointless early filing of federal petitions, unnecessarily involving both the courts and the litigants in two proceedings.  As the Court discussed in the preceding section, a habeas petitioner — if he has exhausted claims — need not wait for the completion of pending state post-conviction proceedings to seek federal habeas relief.  If he does so, however, he should not expect, absent a reasonable basis for the early federal filing such as a significant timeliness issue in the state proceedings, to necessarily be granted a stay because the state proceedings that he did not wait to complete still are pending.[FN13]

> [FN13]To the extent — if any — that the multiple unpublished district court decisions cited by petitioner are apposite in the first instance, the Court does not find the decisions persuasive as support for a finding of "good cause" in the procedural posture presented in this case. Petitioner presents a garden variety situation of a petitioner simply failing to wait for the state post-conviction proceedings to be completed. Absent either a *reasonable* concern that the state proceedings might be found to be untimely or extensive delays such as in *Phillips, supra*, merely failing to wait for the completion of the state proceedings does not give rise to a situation where there is good cause for the failure to exhaust.

*Brooks*, at *4 (emphasis in original).[22]

Petitioner urges that "[t]o the extent that this unpublished dicta would authorize the dismissal of a 'mixed petition,' when the exhaustion issues in that petition could be cured by awaiting the completion of a pending state proceedings [sic], it conflicts with Pace . . . ." #37, at 2.  Petitioner misreads *Pace* and stands that decision on its head.  *Pace* does not in any sense authorize the filing of a protective petition and entry of a stay so that "the exhaustion issues in that [mixed] petition could be cured."  The discussion in *Pace*, again, was directed to the filing of a protective mixed petition in a circumstance where waiting for the conclusion

---

[22]The quoted holding was in the alternative to a holding that a stay was not available because the petition was completely unexhausted.  The Court made the alternative holding in response to Brooks' argument that a stay was available even for a wholly unexhausted petition despite controlling Ninth Circuit authority to the contrary.

of the pending state proceedings potentially could result in a later federal petition being untimely because of the presence of an actual significant timeliness issue. No such circumstance was presented in *Brooks,* and no such circumstance is presented here.[23]  The Court is wholly unpersuaded by petitioner's suggestion that *Pace* provides petitioners *carte blanche* to routinely file mixed petitions in federal court after their direct appeal and before the conclusion of state post-conviction proceedings.  The Court completely rejects that argument and fully concurs with the observations in *Brooks*.

Petitioner contends that *Brooks* is distinguishable because there were nearly three years of direct appeal proceedings and nine months of state post-conviction proceedings before he sought federal relief.  In the final analysis, the controlling law here is not *Brooks* or any of the unpublished district court cases from myriad other procedural settings cited by

---

[23]A number of the unpublished federal district court decisions cited by petitioner at pages 2-3 of his reply (#37) involved circumstances where there was an actual significant timeliness issue as to the pending state proceeding -- or the court at least perceived there to be such an issue.

For example, in *Moritz v. Lafler*, 2008 WL 62458 (E.D. Mich., Jan. 3, 2008), the petitioner's conviction had been affirmed on appeal but the case had been remanded for re-sentencing.  He filed a federal petition while his appeal from the re-sentencing still was pending.  The district court proceeded on the premise that "a second, exhausted petition would be time barred" under AEDPA and that a stay should be entered "in order to avoid Petitioner being time-barred from seeking habeas relief following the completion of his appeal from his re-sentencing."  Slip op., at *1 & *2.  This Court is not sanguine that, at least in a comparably situated Nevada case, any of the federal limitation period even would have begun to run prior to the completion of the appeal from the re-sentencing.  The *Moritz* court, however, was of the view that the time would expire in that case during the pendency of that appeal.  The decision thus was – on its stated premise – fully consistent with the analysis herein.

The Court does not concur in petitioner's reading of *Hogan v. California*, 2008 WL 2557974 (N.D. Cal., June 23, 2008), and *Wright v. Hedgpeth*, 2008 WL 2557972 (N.D. Cal, June 23, 2008), as holding that the good cause inquiry is restricted to whether the petitioner had good cause for the failure to exhaust only *direct appeal* appeal claims.  Petitioner reads these cases as recognizing "that petitioner's ability to raise the unexhausted claims 'by way of state habeas corpus' is a point in favor of, and not against, the case for good cause."  #37, at 3.  To the extent that the decisions *arguendo* could be read to hold that a petitioner does not need to have good cause for failing to wait for timely post-conviction claims to be exhausted, the Court finds the decisions unpersuasive.

Decisions from other district courts in all events do not constitute binding authority in this Court.  To any *arguendo* extent that *Moritz* or any of the other cited cases could be read to support the argument made here, the Court is not persuaded and declines to follow the lower court cases.  *Pace* does not authorize entry of a *Rhines* stay where the petitioner simply has filed a federal petition prior to the completion of proceedings on a facially timely state post-conviction petition.

1  petitioner.  The controlling Supreme Court case law in *Pace* does not authorize the filing of

2  a protective petition and entry of a *Rhines* stay in a situation where the petitioner simply has

3  filed a federal petition prior to the completion of facially timely state post-conviction

4  proceedings.  The delays in state court adjudication to which petitioner refers are not outside

5  the pale in courts with limited resources, whether in state or federal court.  The delays do not

6  provide good cause for petitioner's failure to wait for the completion of the facially timely-filed

7  state post-conviction proceedings.  Impatience, even by an elderly petitioner, does not

8  constitute good cause.

9       Petitioner further points to the Court's order appointing federal habeas counsel, which

10  noted, *inter alia*, that at least a claim as to his competency had been raised in prior

11  proceedings.[24]  However, when the Court appoints federal habeas counsel in this procedural

12  setting after weighing all pertinent factors, what often is one of the concerns for the Court is

13  that the petitioner have the benefit of the advice of counsel in assessing his options.  A

14  petitioner in this context does in fact have the option of proceeding forward on exhausted

15  claims without waiting for the conclusion of the pending state post-conviction proceedings.

16  He does so, however, at the substantial risk that a later federal petition filed after the

17  conclusion of the state proceedings will be barred as a successive petition.  Generally in this

18  circumstance, absent demonstration of a basis for a stay, the petitioner either must dismiss

19  the federal proceeding until the state proceedings are concluded or proceed forward only on

20  exhausted claims knowing that a second federal petition likely will be successive.  The

21  appointment of counsel in part to advise a petitioner in making that decision, however, does

22  not in any sense signify that the petitioner has good cause for a failure to exhaust claims.

23       Petitioner accordingly has failed to demonstrate good cause under *Rhines*.[25]

24

25       [24]The Court notes, however, that the current record reflects that petitioner has filed both a state

26  petition and a federal petition within the applicable time limits.  He further filed extensive proper person
    papers on the first direct appeal in the state supreme court on which he obtained the relief requested.  He

27  thus does not appear to be without any capability to timely and effectively seek relief in court proceedings.

28       [25]The Court does not reach, and makes no implied holding, as to the remaining *Rhines* factors.

The motion for the stay that was requested therefore will be denied. The represented petitioner accordingly has availed himself of the opportunity to file a motion for a stay pursuant to the prior scheduling order in this case. He made no alternative request for other stay relief within the time provided for in the prior order. Petitioner thus now must elect between his remaining potential options under *Rose v. Lundy*, *i.e.,* dismissal without prejudice either of the unexhausted claims or of the entire petition. The Court notes that petitioner currently has over three months left in the federal limitation period, which typically will not begin to run again until the issuance of the remittitur at the conclusion of any timely state post-conviction appeal.[26] A dismissal without prejudice of the present petition thus would not necessarily result in a promptly-filed new federal petition being untimely.

### Special Order 108

Special Order 108 states in pertinent part that "[i]f the involvement of a minor child must be mentioned, only the initials of that child should be used." The Court understands that the minor children involved in this case perhaps may have become adults in the intervening years. However, the privacy interests of a then-vulnerable child do not stop as to incidents in which they were involved as a child merely because they since have become an adult. Nor does the potential for harm from disclosure end after the child becomes an adult. Indeed, it is not difficult to conceive of scenarios in which such public disclosure during the former child's adult years may be quite harmful. For all papers filed hereafter, counsel shall comply with Special Order 108 as to all individuals who were minors at the operative time. *Accord Lewis v. State of Nevada*, No. 2:10-cv-01225-PMP-CWH, #53, at 11-12.

IT THEREFORE IS ORDERED that respondents' motion (#29) to dismiss is GRANTED IN PART, such that the Court holds that the following claims (the "unexhausted claims") are not exhausted:

---

[26] Petitioner at all times remains responsible for calculating the running of the federal limitation period and timely presenting exhausted claims. The Court simply notes that, unlike the situation typically faced on a motion for a stay, in the present case dismissal of the mixed petition would not necessarily lead to a later federal petition being untimely. In the more typical case, either the limitation period already has expired or it likely will expire before the state proceedings conclude and petitioner can return to federal court.

(a)   Grounds 1 and 2 in their entirety;

(b)   Ground 3 to the extent that petitioner alleges that:

(a) the prosecutor engaged in prosecutorial misconduct, including but not limited to allegations that the prosecutor intentionally elicited testimony from the officer that the interview concluded when petitioner invoked his right to counsel and thereafter indirectly commented upon this invocation by referring to the officer's testimony in closing argument; (b) trial counsel was ineffective, including for failing to object to the testimony as to his invoking his right to counsel; and (c) he was denied rights to due process and to a reliable sentence;

(c)   Ground 4(a) to the extent that petitioner alleges that: (a) he is actually innocent of sexual assault of M.N.; (b) the prosecutor engaged in prosecutorial misconduct in the State's closing argument by misrepresenting M.N.'s testimony; and (c) he was denied effective assistance of counsel, including when trial counsel did not object to the prosecutor's alleged misrepresentations;

(d)   Ground 4(b) in its entirety;

(e)   Ground 5 to the extent that petitioner alleges: (a) operative facts regarding his requests and efforts to withdraw his pleas from the entry of the pleas on July 23, 2003, up to the filing of a counseled motion to withdraw plea on May 31, 2005; (b) that substitute counsel further delayed his 2006 trial

because of duties in another case; (c) operative facts seeking to establish prejudice other than the factual assertions regarding health issues and an alleged attack by guards actually made in his opening brief on direct appeal; and (d) claims of denials of rights to due process and effective assistance of counsel;

(f)     Ground 6 to the extent that petitioner alleges that: (a) the final sentence of the instruction is constitutionally infirm in stating that "doubt, to be reasonable, must be actual, not mere possibility or speculation;" (b) the alleged jury instruction error denied him equal protection and violated the Eighth Amendment; and (c) he was denied effective assistance of counsel, including when when trial counsel failed to object to the giving of the instruction, failed to propose an alternate instruction, and instead endorsed the allegedly deficient instruction in his closing argument;

(g)     Ground 7 to the extent that it is alleged that: (a) the competency evaluation was inadequate because, *inter alia*, it was conducted by psychologists rather than psychiatrists and was based upon inadequate review of insufficient materials; and (b) petitioner was denied effective assistance of counsel, including when trial counsel failed to request a hearing on his competency, cross-examine the psychologists, and present evidence on the issue;

1       (h)    Ground 8 in its entirety; and

2       (i)    Ground 9 to the extent that it presents claims of

3       cumulative error based on any alleged errors other

4       than those raised on direct appeal.

5   IT FURTHER IS ORDERED that petitioner's motion (#32) to stay is DENIED.

6   IT FURTHER IS ORDERED that petitioner shall have **thirty (30) days** from entry of this

7   order within which to file a motion for dismissal without prejudice of the entire petition or for

8   partial dismissal only of the unexhausted claims, which shall be expressly referred to as

9   specified in the subparagraphs (a) through (i) above verbatim.  Any motion filed must contain

10   or be accompanied by, either contemporaneously or via a document filed within **ten (10) days**

11   thereafter, a signed declaration by petitioner under penalty of perjury pursuant to 28 U.S.C.

12   § 1746 that he has conferred with his counsel in this matter regarding his options, that he has

13   read the motion, and that he has authorized that the relief sought therein be requested from

14   the Court.  The entire petition will be dismissed without prejudice for lack of complete

15   exhaustion if a motion and/or the verification is not timely filed.

16   IT FURTHER IS ORDERED that the standard response and reply times under Local

17   Rule LR 7-2 shall apply to any such motion filed, except that the response time shall run from

18   the filing of the verification rather than the motion itself.

19   IT FURTHER IS ORDERED that petitioner's motion (#35) for an extension of time is

20   GRANTED *nunc pro tunc* in connection with the previously-filed reply (#37).

21   IT FURTHER IS ORDERED that, for all papers filed hereafter in this action, counsel

22   shall comply with Special Order 108 as to all individuals who were minors at the time of the

23   operative events.

24   DATED:  This 5th day of March, 2013.

25

26

27   ROBERT C. JONES
    Chief United States District Judge

28