UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JULIO CESAR NAVAS,

Petitioner,

v.

JAMES BACA, et al.,

Respondents.

Case No. 3:10-cv-00647-RCJ-WGC

ORDER

This second-amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 by state prisoner Julio Cesar Navas is before the court for final disposition on the merits (ECF No. 64). Respondents have answered the petition (ECF No. 103), and Navas replied (ECF No. 109).

I.      **Procedural History and Background**

As set forth in this court's order on respondents' motion to dismiss, on July 23, 2003, Navas entered a nolo contendere plea in state case no. CR02-2190 to count II: lewdness with a child under the age of fourteen years and counts III and IV: open or gross lewdness (exhibit 30).[1] The state district court sentenced him as follows: count II – life with the possibility of parole after 10 years; count III – 12 months, concurrent with count II; count IV – 12 months, concurrent with counts II and III. Exh. 34. Also on July 23, 2003, Navas entered a nolo contendere plea in state case no. CR03-0647 to

---

[1] Exhibits 1-196 referenced in this order are exhibits to petitioner's first-amended petition, ECF No. 16, and are found at ECF Nos. 17-24. Exhibits 197-204 are exhibits to Navas' second-amended petition and are attached to that petition at ECF No. 64.

intimidating or bribing a witness.  Exh. 31.  The state district court sentenced him to 23 to 32 months, concurrent with the sentence imposed in CR02-2190.  Exh. 35.

Navas appealed both convictions, and the Nevada Supreme Court approved a stipulation of the parties to consolidate the appeals.  *See* exh. 72.  On April 26, 2004, the state supreme court issued an order of limited remand for the purpose of securing new counsel for Navas.  *Id.*  The state district court appointed new counsel, and the parties filed a supplemental fast track statement and response.  Exhs. 84, 86, 87.

On January 20, 2005, the Nevada Supreme Court vacated the judgments and remanded in order to afford Navas the opportunity to file a counseled motion to withdraw his pleas.  Exh. 89.  Remittitur issued on February 15, 2005.  Exh. 91.  On May 31, 2005, Navas filed a motion to withdraw both pleas.  Exh. 93.  The state district court granted the motion.  Exh. 96.

On February 8, 2006, a jury convicted Navas in case no. CR02-2190 of count I: sexual assault on a child; count II: lewdness with a child under the age of fourteen years; and counts III and IV: open or gross lewdness.  Exh. 126.  The jury also convicted him in case no. CR03-0647 of intimidating or bribing a witness.  *Id.*  The state district court sentenced him as follows:  count I – life with the possibility of parole after 20 years; count II – life with the possibility of parole after 10 years, consecutive to count I; and counts III and IV – two terms of 12 months, concurrent with count I.  Exh. 132. In case no. CR03-0647, he was sentenced to 24 to 60 months, concurrent with case no. CR02-2190.  Exh. 130.

Navas appealed in both cases, and the Nevada Supreme Court consolidated the appeals.  Exhs. 134, 135, 142.  The state supreme court affirmed the judgments on December 12, 2008, and remittitur issued on January 6, 2009.  Exhs. 165, 166.

Navas filed a state postconviction habeas petition on November 30, 2009.  Exh. 170. The state district court conducted an evidentiary hearing, granted the petition as to the claim of ineffective assistance of counsel (IAC) with respect to the sexual assault

conviction, and denied the petition as to IAC claims with respect to the lewdness with minors and witness intimidating convictions. Exh. 200. Amended judgments of conviction were entered. Exh. 204. Both parties appealed. On April 15, 2015, the Nevada Supreme Court affirmed the state district court's order. Exh. 201.

In the meantime, Navas had dispatched his federal habeas petition for filing on October 12, 2010 (ECF No. 5). This court granted respondents' motion to dismiss in part, concluding that certain federal grounds had not been exhausted in state court (ECF No. 38). Navas, through counsel, filed a notice with the court stating that he would not be filing a motion to dismiss some or all grounds of the federal petition and indicating that he understood failure to file such a motion would result in the dismissal of his federal petition without prejudice (ECF No. 39). Accordingly, on May 17, 2013, this court dismissed the federal petition without prejudice (ECF No. 40). On July 9, 2015, the Ninth Circuit Court of Appeals reversed and remanded (ECF No. 46). The court of appeals noted that the Nevada Supreme Court had granted Navas limited postconviction relief in its order dated April 15, 2015. *Id.* The court of appeals stated that Navas was neither procedurally barred nor time-barred from filing a new federal petition and that Navas had fully exhausted the claims in his amended federal petition. *Id.*

On June 22, 2016, Navas filed a counseled second-amended federal petition (ECF No. 64). Respondents have answered the petition (ECF No. 103), and Navas replied (ECF No. 109).

## II.     Legal Standard under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538

4

U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

## III. Trial Testimony

The trial testimony reflected that Julio Navas and his wife Ana adopted three sisters. Julia, the oldest sister, testified that she met Ana Navas when Ana was an assistant teacher at Julia's middle school.  Exh. 122, pp. 26-42.   Julia and her two sisters had previously lived her their biological mother.  Julia stated that her father was somewhere in Mexico; at the time of trial she had not had any contact with him for twelve years.

When their mother was incarcerated on drug convictions, Julia asked Ana to adopt them and Ana and Navas agreed.

Julia stated that starting when she was fourteen Navas would have her take off her shirt and bra. He said he was checking for pimples or cancer. Navas would rub lotion on her breasts. She said he would have her take off her pants and underwear, squat or lie down, and he would look at her genitals. She stated that these incidences continued for longer than a month and stopped when Navas was arrested. Julia testified that she did not tell anyone because she feared she would be separated from her sisters. *Id.*

Alma, the middle sister, testified that she is one year younger than Julia. *Id.* at 43-54. Alma said she and her sisters lived with Ana and Julio Navas for about two years. She stated that when she was about fourteen Navas would have her remove her shirt and bra and rub lotion on her breasts. He said it was to check for pimples or cancer. Alma would tell him to stop but he would not. She testified that these incidents began about four months after the girls moved in and stopped when the girls told Ana, which led to Navas' arrest. *Id.*

The youngest sister, Maria, testified that Navas began touching her about three or four months after the girls moved in. *Id.* at 55-68. She was nine years old. Navas told her that one of his daughters had died from some sort of infection;[2] he would call her into the bathroom, have her undress, and rub lotion on her breasts and between her thighs. It would happen twice a week, on Navas' days off, when Ana left to take the older girls to school and before Maria went to the school bus. Maria stated that on one occasion Navas was rubbing lotion between her thighs and then "I guess he put his finger inside or something and it really hurt . . . . Because it just felt like his finger went into my body . . . " *Id.* at 62. Maria stated that she told Navas she was going to tell Ana, and Navas told her if she did she would go to a foster home and never see her sisters again. Maria stated that Ana and Navas began to have marital trouble. Ana asked the

---

[2] While not entirely clear, Ana Navas' trial testimony indicated that Julio Navas had had an adult daughter who died from AIDS after contracting HIV through a blood transfusion. Exh. 123, pp. 80-82.

girls if they wanted to stay with Navas. Maria said no and told her about Navas' actions. *Id.*

Police officer Jean Walsh testified that, after interviewing the three sisters and Ana, she went to Navas' house in July 2002. Exh. 123, pp. 37-54. Walsh told Navas that he was under arrest; he agreed to go down to the police station to discuss the allegations. Navas told Walsh that the girls made up the story because they did not want Navas to tell the police about their stepfather Pedro's (their biological mother's boyfriend) involvement with drugs. He also said Ana convinced the girls to make up the allegations. He denied touching the girls. Walsh testified that at some point in the interview Navas invoked his right to have an attorney present; at that time, she discontinued the questioning. *Id.*

Julio Navas' then ex-wife Ana testified. *Id.* at 55-89. She testified that after the marriage deteriorated, she decided to get a divorce. She planned to go live with her older son, who was not Navas' son, and she was not going to take the girls with her because she was unable to support them. She told the girls she planned to leave. The girls were very upset and insisted she take them with her. Maria finally told Ana that she did not want to stay with Navas because he was touching her. Ana testified that none of the girls had any skin problems or cancer, and no one had prescription lotion of any kind. *Id.*

## IV. Instant Petition

### a. Claims Rejected on Direct Appeal

### Ground 3

Navas contends that the prosecutor improperly elicited Officer Walsh's testimony that Navas invoked his right to counsel in violation of his Fifth, Sixth and Fourteenth Amendment rights (ECF No. 64, pp. 43-46).

Prosecutorial misconduct may "'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Greer v. Miller*, 483 U.S. 756, 765 (1987), quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). To constitute a due

process violation, the prosecutorial misconduct must be "'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765, quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985).

As set forth above, the prosecutor elicited testimony from Officer Walsh that she interviewed Navas after his arrest and that when Navas invoked his right to have an attorney present the interview terminated. Exh. 123, p. 47. Navas did not object to the testimony at trial.

The Nevada Supreme Court rejected this claim, reasoning:

> The detective's comment was error. However, Navas must demonstrate that the error affected his substantial rights. Navas has failed to show how this one reference to his right to silence prejudiced him or affected his substantial rights. Reference to a defendant's post-arrest silence is harmless beyond a reasonable doubt if "(1) at trial there was only a mere passing reference, without more, to an accused's post-arrest silence, or (2) there is overwhelming evidence of guilt." *Sampson v. State*, 122 P.3d 1255, 1261 (Nev. 2005) (quoting *Morris v. State*, 913 P.2d 1264, 1267-68 (1996)). The evidence in this case was overwhelming. All three victims testified consistent with their prior statements and consistent with each other's testimony that Navas committed the acts alleged. We conclude that the brief reference to Navas' invocation of his right to counsel did not affect his substantial rights.

Exh. 165, pp. 9-10.

This court agrees that the police officer only briefly referenced Navas' invocation of his right to counsel. *See* exh. 123, pp. 36-53. Navas has not met his burden to show that the error had a substantial and injurious effect on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). Accordingly, Navas has failed to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.

**Ground 4**

Navas alleges that insufficient evidence supported his conviction on the witness intimidation charge (ECF No. 64, pp. 47-53). This conviction stemmed from recorded prison phone calls and Ana's testimony that Navas called their mentally-challenged son Julito numerous times from prison and, knowing that Ana was listening to the call, urged Julito that Ana could not bring the girls to testify at trial because Ana would lose the house and be otherwise unable to support the four children. The prosecution played five of the phone calls for the jury. Exh. 123, pp. 67-72, 73-75, 78-79, 85-87; ECF No. 64, pp. 47-52.

Respondents point out that Navas discharged his concurrent sentence for witness intimidation on November 24, 2008 (Exh. A at ECF No. 73-1; exh. 130). He did not dispatch his first federal petition for filing until almost two years later in October 2010 (ECF No. 1). Thus, Navas was not in custody on the witness intimidation conviction when he filed this petition, and this court lacks jurisdiction to consider ground 4. 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 492 (1989), *Henry v. Lungren*, 164 F.3d 1240, 1241 (9th Cir. 1999).

**Ground 5**

Navas argues that his Fifth, Sixth and Fourteenth Amendment rights to a speedy trial, due process, and effective assistance of counsel were violated because his trial occurred about three and one-half years after his arraignment (ECF No. 64, pp. 54-62).

The United States Supreme Court has held that a balancing test that weighs the conduct of both prosecution and defendant is appropriate when considering speedy trial rights, and the balance includes considering length of delay, reason for delay, defendant's assertion of his or her right, and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

The Court had previously observed in *U.S. v. Ewell* that whether a delay amounts to an unconstitutional deprivation of rights depends on the circumstances. 383 U.S. 116,

120 (1966). In *Ewell*, a 19-month delay was not unconstitutional because the defendant's original conviction was vacated on appeal and he was retried "in the normal course of events." *Id.* at 120-121.

Navas waived his speedy trial right in the first arraignment. Exh. 14. As set forth above, he entered a nolo contendere plea in each case in July 2003. Exhs. 30, 31. The state district court granted Navas' motion to withdraw the pleas in July 2005. Exh. 96. At an August 2005 hearing to set the trial date, Navas indicated that he wished to invoke his right to a speedy trial and go to trial within 60 days. Exh. 100. Trial was set for October 17, 2005 based on defense counsel's availability. *Id.* On October 7, 2005, Navas filed a motion for psychiatric evaluation, which the court granted. Exhs. 106, 109. At the request of defense counsel, the court vacated the trial date pending the results of the competency evaluations. Exh. 110. Based on the fact that the two psychologists who evaluated Navas found him to be competent, the state district court found him competent to understand the proceedings and assist counsel at a November 22, 2005 hearing. Exh. 114. Trial was then set for, and in fact commenced on, February 6, 2006. *Id.*; exhs. 119-126.

The Nevada Supreme Court held on appeal that no violation of the right to a speedy trial occurred:

> We conclude that Navas' claim that his speedy trial right was violated lacks merit. Navas' conviction was vacated, and he was subsequently tried and convicted of the same charges. It is not a violation of a defendant's speedy trial rights when a delay is caused by the vacation of a defendant's conviction. *United States v. Ewell*, 383 U.S. 116, 120-121 (1966). In *Ewell*, the United States Supreme Court held that a 19-month delay was not a violation of Ewell's speedy trial rights because his original conviction had been vacated on appeal. While the overall delay, from his original arraignment to the time he was brought to trial, was lengthy, most of the delay was due to Navas' successful withdrawal of his plea of nolo contendere. Navas originally waived his speedy trial right at his arraignment on January 23, 2003. He subsequently pleaded nolo contendere and was sentenced. Navas' motion to withdraw his plea was granted, and he was arraigned again on August 2, 2005. At counsel's request, trial was set for October 17, 2005. Counsel then requested that trial be continued so that Navas' competency could be evaluated. Navas was found competent on

November 15, 2005. Thereafter, trial was set for February 6, 2006, which was the earliest available date for the State, counsel, and the district court. Based on the record before us, we conclude that the length and basis for the delay were not unreasonable.

Additionally, Navas has failed to allege how he was prejudiced by the delay except that the length of delay requires that prejudice is presumed and that his physical health has deteriorated. First, Navas argues that the length of the delay created a presumption of prejudice. In *Doggett v. United States*, 505 U.S. 647, 655-656 (1992), the United States Supreme Court held that delay of more than a year creates a presumption that a defendant has been prejudiced. *Id.* Here, the delay was not caused by the State, rather it was due in large part to Navas' withdrawal of his plea and the subsequent competency determination. Given the reasons for the delay, we conclude that the presumption of prejudice does not apply.

Since the presumption of prejudice does not apply, Navas must allege specific instances of prejudice. "Bare allegations of impairment of memory, witness unavailability, or anxiety, unsupported by affidavits or other offers of proof, do not demonstrate a reasonable possibility that the defense will be impaired at trial or that defendants have suffered other significant prejudice." *Sheriff v. Berman*, 659 P.2d 298, 301 (Nev. 1983). Navas has only alleged that his defense was diminished, and his deteriorating physical health affected his ability to assist his counsel. Navas has not explained exactly how his deteriorating physical health affected his ability to assist counsel, only that it may have affected his mental health. Navas' vague allegations of prejudice are insufficient to support a claim that his constitutional right to a speedy trial was violated.

Exh. 165, pp. 5-8.

Navas entered a nolo contendere plea in each case, and the delay was largely due to his success in litigating to withdraw those pleas. Navas states in his federal petition that the three victims' trial testimony differed from their statements to police and preliminary hearing accounts, but this is belied by the record. *See* exh. 78 (police report); exh.12, pp. 5-34, 60-80, 81-97 (preliminary hearing); exh. 122 (trial testimony). The Nevada Supreme Court's decision that his speedy trial rights were not violated is eminently reasonable. Navas certainly has not demonstrated that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state

court proceeding. 28 U.S.C. § 2254(d). Thus, federal habeas relief is denied as to ground 5.

**Ground 6**

Navas challenges the Nevada reasonable doubt instruction, arguing that it violated his Fifth, Sixth, and Fourteenth Amendment rights to due process, equal protection, a fair trial, a trial before an impartial jury, and effective assistance of counsel (ECF No. 64, pp. 62-66).

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Cage v. Louisiana*, 498 U.S. 39 (1990), quoting *In re Winship*, 397 U.S. 358, 364 (1970). To obtain relief based on an error in instructing the jury, a habeas petitioner must show the "'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, the state district court instructed the jury:

> A reasonable doubt is one based on reason. It is not mere possible doubt but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable, must be actual, not mere possibility or speculation.

Exh. 119, p. 17, jury instruction no. 14.

Affirming Navas' convictions on direct appeal, the Nevada Supreme Court held that the instruction complied with NRS 175.211. Exh. 165, p. 10. The state supreme court observed that it has repeatedly upheld the constitutionality of the reasonable doubt instruction and declined to revisit the issue in Navas' case. *Id.*

Navas acknowledges that the Ninth Circuit has rejected constitutional challenges to this instruction. *Ramirez v. Hatcher*, 136 F.3d 1209, 1214 (9ᵗʰ Cir. 1998) ("While we do not endorse the Nevada instruction's 'govern or control' language," it does not render

12

the instruction unconstitutional because the charge as a whole correctly communicates concepts of burden of proof and reasonable doubt). But he contends that the reasonable doubt instruction permitted the jury to convict him based on a lesser quantum of evidence than the constitution requires. He states that he includes ground 6 in order to preserve it for appellate review "in the event of possible future Ninth Circuit or United States Supreme Court decisions on the issue" (ECF No. 64, p. 65).

Accordingly, Navas has not shown that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Navas is not entitled to federal habeas relief on ground 6.

**Ground 7**

Navas contends that the trial court failed to conduct an adequate hearing to determine whether he was competent to stand trial, which violated his Fifth, Sixth and Fourteenth Amendment rights to due process, a fair trial, and effective assistance of counsel (ECF No. 64, pp. 66-72). He also argues that his counsel informed the district court at sentencing that counsel was concerned that Navas' mental condition had deteriorated since his previous competency hearing.

Clearly, the Fourteenth Amendment Due Process Clause proscribes the criminal prosecution of a defendant who is not competent to stand trial. *Medina v. California*, 505 U.S. 437, 439 (1992). "The test must be whether [petitioner] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding— and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. U.S.*, 362 U.S. 402 (1960).

The state-court record indicates that counsel for Navas filed a motion for psychiatric evaluation before trial, which the court granted. Exhs. 106, 109. The

psychologists who conducted two separate competency evaluations both concluded that Navas was competent to stand trial. Exhs. 112-114. Based on the two evaluations, the state district court found him competent to understand the proceedings and assist counsel at a November 2005 hearing. Exh. 114.

At sentencing, Navas' counsel stated that he continued to have concerns about Navas' mental stability and competency. Exh. 131, pp. 4-8.

Counsel told the court:

> I felt that [Navas] doesn't really understand what we are doing and what's going on in this case. And he has filed numerous ex-parte rambling motions that are incoherent and, frankly, just off the wall.
>
> And this has been going on in this case for a long time with him.

*Id.* at 5.

And with respect to Navas withdrawing his plea, his attorney said:

> And, frankly, I never understood why he wanted to go forward. I explained that to him. And, frankly, I am not sure he really understood. That's why I had him evaluated. The experts have done their work. I am not challenging their finding of competency at this point, your Honor. I just wanted the Court to know that that has been a concern with me with Mr. Navas from the very first day I have gotten this case. And it hasn't gotten any better. I think it has gotten worse, frankly; but I am not saying he is incompetent to proceed at this time.
>
> I think he is competent enough. He has been found that way by the experts, so I think we can proceed. I just thought the Court should know my thoughts of him, as I have spent some time with him during the trial.

*Id.* at 7-8.

At that point during the sentencing hearing, the court then permitted Navas to speak at length. *Id.* at 8-22. He argued that the State violated specific Nevada statutes during the proceedings against him. He asserted his innocence. He told the court that Ana and the girls fabricated their stories because he discovered that they were manufacturing drugs with the boyfriend or former boyfriend of the girls' biological mother, and they needed Navas out of the way.

The court then noted that the court and Navas had different perspectives on the case. The court further observed:

> I find that you are an intelligent man and you do have a good memory. . . . I would have to say that some of these things are misdirected. You take a shotgun approach and you don't always hit the target. So, you have to be directed by somebody to go to the more pertinent legal points.
>
> But the things that you are talking about, these are things that should have been brought forth in a trial.

*Id.* at 22. The court informed Navas that his recourse was a direct appeal and a petition for postconviction relief. Navas responded that he had read and knew the rules. Navas also accurately noted the deadlines for filing an appeal and postconviction petition.

The Nevada Supreme Court rejected this claim on direct appeal:

> An incompetent defendant is defined under NRS 178.400(2) as one who does not have the present ability to understand either "the nature of the criminal charges against him" or "the nature and purpose of the court proceedings" and is not able to "[a]id and assist his counsel in the defense at any time during the proceedings with a reasonable degree of rational understanding." NRS 178.405(1). The United States and Nevada Constitutions compel a district court to hold a formal competency hearing when there is "substantial evidence" that the defendant may not be competent to stand trial. *Melchor-Gloria v. State*, 660 P.2d 109, 113 (Nev. 1983); *see* U.S. Const. amend. XIV, § 1; Nev. Const. art. 1 § 8. "In this context, evidence is 'substantial' if it 'raises a reasonable doubt about the defendant's competency to stand trial. Once there is such evidence from any source, there is a doubt that cannot be dispelled by resort to conflicting evidence." *Melchor-Gloria*, 660 P.2d at 113 (citing *Moore v. United States*, 464 F.2d 663, 666 (9th Cir. 1972)). A district court abuses its discretion and denies a defendant his right to due process when there is reasonable doubt regarding a defendant's competency and the district court fails to order a competency evaluation. *Morales v. State*, 992 P.2d 252, 254 (2000)).
>
> Here, Navas was found competent to stand trial on November 15, 2005, less than three months prior to trial and four months prior to sentencing. While counsel stated to the district court at sentencing that Navas' mental condition had deteriorated, he told the district court that he believed that Navas was competent. After observing Navas during his allocution, the district court found him to be intelligent, with a good memory. The district court explained to Navas that many of the issues he raised in his allocution were not properly before the court at sentencing.[fn6].

[fn6] Navas argued during allocution that his ex-wife and the victims were conspiring against him by making these allegations in order to keep him from turning in the victim's mother's boyfriend on drug charges. The district court explained that these matters should have been presented to the jury during the guilt phase of the trial.

Navas stated that he understood and indicated that he would be raising these issues on appeal. Navas also demonstrated that he understood his right to appeal and that the information he was relating to the district court should have been presented to the jury. Further, he understood that he was allowed to call witnesses on his behalf at trial, and he understood his right to appeal and file a post-conviction writ of habeas corpus. Navas also demonstrated awareness of the deadlines for filing an appeal and a post-conviction writ of habeas corpus. Based on the record before it, the district court was not presented with substantial evidence that raised a reasonable doubt as to Navas' competency. Therefore, we conclude that the district court did not abuse its discretion by not inquiring further into Navas' competency.

Exh. 165, pp. 3-5.

Navas has presented nothing here to show that there was any basis to question his competency during the trial or at sentencing. Navas has failed to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 7.

### b. Ineffective Assistance of Counsel Claims

Grounds 1, 2, and 8 set forth claims of ineffective assistance of counsel (IAC) claims. IAC claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's

16

representation fell below an objective standard of reasonableness. *Id.* To establish

prejudice, the defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* A reasonable probability is "probability sufficient to undermine confidence in the

outcome." *Id.* Additionally, any review of the attorney's performance must be "highly

deferential" and must adopt counsel's perspective at the time of the challenged conduct,

in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the

petitioner's burden to overcome the presumption that counsel's actions might be

considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient

performance of counsel resulting in prejudice, "with performance being measured

against an objective standard of reasonableness, . . . under prevailing professional

norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations

omitted). When the ineffective assistance of counsel claim is based on a challenge to a

guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that

there is a reasonable probability that, but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52,

59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal

habeas court may only grant relief if that decision was contrary to, or an unreasonable

application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).

There is a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme

court's decision on a claim of ineffective assistance of counsel as "doubly deferential."

*Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's

performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal

citations omitted). Moreover, federal habeas review of an ineffective assistance of

counsel claim is limited to the record before the state court that adjudicated the claim on

the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has

specifically reaffirmed the extensive deference owed to a state court's decision

regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was
> unreasonable under § 2254(d) is all the more difficult. The standards
> created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at
> 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct.
> 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review
> is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a
> general one, so the range of reasonable applications is substantial. 556
> U.S. at 124. Federal habeas courts must guard against the danger of
> equating unreasonableness under *Strickland* with unreasonableness
> under § 2254(d). When § 2254(d) applies, the question is whether there is
> any reasonable argument that counsel satisfied *Strickland's* deferential
> standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of

counsel must apply a 'strong presumption' that counsel's representation was within the

'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466

U.S. at 689). "The question is whether an attorney's representation amounted to

incompetence under prevailing professional norms, not whether it deviated from best

practices or most common custom." *Id.* (internal quotations and citations omitted).

**Ground 1**

In ground 1A Navas challenges his sexual assault conviction, arguing that trial

counsel was ineffective because he failed to call an expert witness to respond to the

State's expert's testimony (ECF No. 64, pp. 16-35).  As previously discussed in this

order, Navas was granted state habeas relief on this claim and the sexual assault

conviction was vacated.  Exh. 201, pp. 4-6; exh. 204. Navas is not in custody on the

sexual assault count.  Ground 1A is denied as moot.

In grounds 1B and 1C, Navas contends that his trial counsel was ineffective with

respect to the lewdness charges because he failed to challenge the forensic interviews

18

of the victims with a different expert and failed to present evidence that could have established a motive for false allegations (ECF No. 64, pp. 25-36).

The basis for the vacation of the sexual assault conviction was the problematic expert testimony at trial by Lilly Clarkson, a nurse practitioner. Exh. 123, pp. 5-36. Clarkson testified that when she worked for Nevada CARES—a program involving examining children when there are allegations of sexual assault—she examined Maria. Exh. 123, pp. 5-36. Clarkson testified unequivocally that Maria's examination revealed injuries that resulted from penetration. *Id.*

At the evidentiary hearing on Navas' state postconviction habeas petition, Dr. James Crawford-Jakubiak, who specializes in child abuse pediatrics, testified as an expert. Exh. 197, pp. 15-154. Dr. Crawford testified that he was originally contacted by Navas' first counsel, Carl Hylin, in 2003. Hylin ultimately negotiated the no contest plea deal. Dr. Crawford said that he was later retained in connection with Navas' postconviction proceedings and prepared a report. Dr. Crawford testified at length, and his testimony contradicted Clarkson's conclusion that Maria's examination revealed injuries that resulted from penetration. Dr. Crawford also testified that non-penetrating acts do not typically cause any injury. He explained: "If I have a child who I see who says someone rubbed her breasts or rubbed her genitalia without penetration and the examination was normal that's what we would expect to see. It would be neither inculpatory or exculpatory." *Id.* at 154.

Hylin also testified at the hearing. *Id.* at 154-210. He stated that he viewed all three girls' testimony about Navas rubbing lotion on their breasts as "very solid." *Id.* at 160. He thought it would be very difficult for a jury not to conclude that Navas performed lewd acts on all three girls. However, he viewed Maria's testimony as equivocal when it came to sexual penetration. He testified that, based on his experience with similar cases, he thought Clarkson's testimony about her examination of Maria was "reckless."

*Id.* at 163.  Hylin stated: "I knew I could hire an expert that was going to pretty well shred her testimony at trial."  *Id.*

Hylin testified that he also retained Dr. William O'Donahue as an expert to testify as to how complex these types of allegations can be, how children can be led—intentionally or unintentionally—to say certain things or make certain claims.  Hylin felt it would have been important to "give the jury some sort of feeling for the frailty that these girls exhibited during the interview process."  *Id.* at 166.  Hylin also testified that based on the evidence he was very concerned that Navas would be convicted of both the sexual assault and lewdness counts, which would mean Navas could not apply for parole for 30 years.  Hylin noted that Navas was in his mid 60's at that time and that such a sentence meant that he would likely die in prison.  Thus, Hylin secured the offer to plead to lewdness charges, which would allow Navas to apply for parole in 10 years.  Hylin acknowledged that Navas "never really warmed up to entering the plea," but did finally enter into the agreement.  *Id.* at 171.

 The state district court granted Navas relief as to the sexual assault conviction, finding that Navas' trial counsel was ineffective for failing to call an expert such as Dr. Crawford to rebut nurse Clarkson's testimony.  Exh. 200, pp. 4-7.  The court held that there was a reasonable probability of a different result on that charge had the defense called an expert such as Dr. Crawford.

The court further held that petitioner failed to show a reasonable probability of a different result on the lewdness charges had the defense called an expert.  Thus, habeas relief was denied as to IAC claims with respect to the other convictions.  *Id.* at 8.

The Nevada Supreme Court affirmed the grant of habeas relief as to the sexual assault count.  The state supreme court further affirmed the denial of the IAC claims with respect to the lewdness counts:

> Appellant argues that the district court erred in concluding that the deficiency in failing to call an expert to rebut the nurse's testimony did not apply to the lewdness counts as well. Appellant fails to demonstrate error. Dr. Crawford's testimony related only to the sexual assault count. While

20

the testimony of M.N. may have been equivocal regarding the sexual assault count, her testimony regarding the lewdness count was not equivocal. Likewise, the testimony of the other victims was not equivocal regarding the lewdness counts. Appellant fails to demonstrate that counsel's failure to present an expert to rebut the nurse's testimony had a reasonable probability of altering the outcome at trial regarding the lewdness counts.

Next, appellant argues that trial counsel was ineffective for failing to call an expert witness, Dr. William O'Donahue, to challenge the reliability of the accusations given alleged defects in the forensic interviews. Appellant fails to demonstrate that it was objectively unreasonable not to present this testimony as any inconsistencies or motivation to tell a particular story could have been elicited in other ways. It is for the jury to determine the credibility of witnesses, *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975), and Dr. O'Donahue acknowledged that any flaws in the forensic interview did not mean that the girls were untruthful, but that any flaws could leave the interviews open to other interpretations. Even assuming that counsel was deficient for failing to present testimony regarding the interviews, appellant fails to demonstrate that there was a reasonable probability of a different outcome had trial counsel presented testimony from this expert in this case.

Exh. 201, pp. 6-7.

Navas argues again here that the girls' testimony was very inconsistent between the police interviews, preliminary hearing, and trial. This court disagrees. *See* exh. 78 (police report); exh.12, pp. 5-34, 60-80, 81-97 (preliminary hearing); exh. 122 (trial testimony). Further, the girls' trial testimony about Navas rubbing lotion on them was consistent and credible. Navas has not shown that the Nevada Supreme Court's decision was contrary to or involved an unreasonable application of *Strickland*. This court, therefore, denies federal habeas as to grounds 1B and 1C. Ground 1 is denied in its entirety.

**Ground 2**

Navas asserts that his trial counsel was ineffective for conceding during closing arguments that Navas committed the acts alleged without Navas' consent (ECF No. 64, pp. 36-42). He styles this claim as a *Nixon* claim. *Florida v. Nixon*, 543 U.S. 175 (2004).

In *Nixon*, a capital case, the Court reaffirmed that counsel has a duty to consult with a client regarding important decisions, including overall defense strategy. *Id.* at 187. There the court held that Nixon's defense counsel satisfied the *Strickland* standard when he made a considered, informed decision to concede Nixon's guilt in order to try to avoid a death sentence during the penalty phase, even though Nixon did not explicitly agree or disagree and in fact was mostly unresponsive to counsel. *Id.* at 192.

Navas also invokes *United States v. Swanson*, in which the Ninth Circuit stated that when a lawyer concedes a client's guilty to the jury without the client's consent and an overwhelming justification for conceding one part of the case, he is not subjecting the case to "meaningful adversarial testing" and "fail[s] to function as the Government's adversary." 943 F.3d 1070, 1074 (9th Cir. 1991).

Here, during closing arguments, Navas' counsel discussed the jury instructions. Exh. 124, pp. 13- 20. Counsel argued:

> And instruction number nineteen is the definition of lewdness.

> Now, . . . these crimes have to have an intent element. The intent that must be shown beyond a reasonable doubt is sexual intent. The law cannot presume sexual intent. In fact, I would submit to you in this case that the State is asking you to presume sexual intent. Because when you heard the facts, every one of us went – and it kind of took our breath away.

> But that's not what this is. The State has to prove by the evidence that my client had sexual intent in this case.

> If they didn't, then you must find him not guilty.

> Let's talk about the evidence that we have in front of us today. All right.

> It is pretty clear that every time this occurred, my client, Mr. Navas, said, "I am looking for pimples. I am putting lotion on these blemishes." That's not really in dispute. Okay.

> I don't know why he did that.

But that was his explanation that he was giving. That was consistent through all three of those girls' testimony. Okay.

And I would suggest to you that that shows what his intent was. And I would ask you not to just convict him because you guys look at this and go, "Oh, my God. What happened."

Okay. Look and see if that really is evidence of sexual intent. In fact, if you read the lewdness statute, which I won't, it is specific intent to have sexual things happen.

Was there any evidence that Mr. Navas took off his clothes? Any evidence that he had the girls touch him?

Was there any evidence that he made any sexual comments to these girls?

There is not.

The evidence is what it is. And the State's asking you to presume intent.

Exh. 124, pp. 16-17.

The Nevada Supreme Court affirmed the denial of this claim in Navas' state postconviction proceedings, concluding that Navas failed to demonstrate that his attorney's strategy was unreasonable under the circumstances, that Navas' consent to the strategy was not required, and that Navas failed to demonstrate a reasonable probability of a different outcome had trial counsel not conceded that Navas committed the physical acts underlying the lewdness counts or presented another defense to the lewdness counts. Exh. 201, pp. 7-8.

This court agrees with respondents that it was not defense counsel's strategy to concede guilt. Counsel conceded that the underlying acts of touching occurred. But lewdness is a specific intent crime, and counsel argued that the State presented no evidence that Navas had any sexual intent. Moreover, especially in light of the girls' consistent testimony, it cannot be said that counsel's strategy was unreasonable. Navas has failed to demonstrate that the Nevada Supreme Court's decision was

contrary to or involved an unreasonable application of *Strickland*. Accordingly, Navas is not entitled to federal habeas relief on ground 2.

**Ground 8**

Navas claims that his appellate counsel was ineffective "to the extent that" he failed to raise or federalize federal grounds 2, 3, 4, 5, 6, or 7 on direct appeal (ECF No. 64, pp. 72-73). However, per the Ninth Circuit's order (*see* ECF No. 46) this court, as set forth above, has adjudicated all of these grounds on the merits as federal constitutional claims. Thus, ground 8 is baseless and is denied. The court further observes that Navas fails to demonstrate that any relevant Nevada Supreme Court decision was contrary to or an unreasonable application of any clearly established federal law, and/or involved an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. U.S.C. 2254(d)(1) and (2).

**Ground 9**

Navas asserts that cumulative error at trial deprived him of his rights to due process and a fair trial (ECF No. 64, p. 73).

On direct appeal, the Nevada Supreme Court held that no error, considered individually or cumulatively, warranted relief. Exh. 165, pp. 10-11. That court appears to have affirmed the denial a claim of cumulative error in Navas' state postconviction petition in its rejection of certain claims that lacked any cogent briefing. Exh. 201, p. 8.

This court has concluded that no basis for federal habeas relief as to any of the claims in this petition exists. In any event, Navas has not demonstrated that the Nevada Supreme Court's rejection of any cumulative error claim was contrary to or an unreasonable application of any clearly established federal law, and/or involved an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. U.S.C. 2254(d)(1) and (2). Thus, ground 9 is denied.

The petition, therefore, is denied in its entirety.

**V.     Certificate of Appealability**

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

Having reviewed its determinations and rulings in adjudicating Navas' petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of any of Navas' claims.

**VI.     Conclusion**

**IT IS THEREFORE ORDERED** that the second-amended petition (ECF No. 64) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent that petitioner's two earlier motions for a certificate of appealability (ECF Nos. 142 and 147) are properly before this court, they are both **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

///

///

**IT IS FURTHER ORDERED** that the Clerk of the Court shall file and serve a copy of this order with the United States Court of Appeals for the Ninth Circuit in case no. 19-71100.

DATED: 22 May 2019.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE